The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, good morning. Thank you. Sorry, I dropped all my stuff to start the first case of the new court term. Welcome to the Fourth Circuit, and we only have one case on the docket today, United States v. Robert Turner. And Mr. Prescott, whenever you're ready. May it please the Court, my name is Ryan Prescott. I represent the appellant, Robert Keyshawn Turner. Although law enforcement had a warrant for Mr. Turner's arrest based on his alleged larceny of a firearm from his brother several days prior, they did not obtain a warrant to search the black Buick in which he was found on the evening of his arrest. Instead, within one minute of Mr. Turner's arrest, law enforcement immediately searched that vehicle for any evidence of any kind of criminal activity, before the arresting officer had even informed the searching officers of the basis for the search, and certainly before any law enforcement personnel made any effort to determine whether that search would be supported by a warrant, by probable cause, or by any exception to the warrant requirement or the exclusionary rule. Accordingly, the warrantless search of the black Buick was per se unreasonable under the Fourth Amendment, and all resulting evidence must be suppressed unless the government proved that it was supported by one of the specifically established and well-defined exceptions to the warrant requirement. How does appellant even have standing to argue about the search here? Didn't he say that the car didn't belong to him? He at one point told the officers that the car didn't belong to him, and then the officers said, well, it's yours now. You're driving the car, so it's your car right now. Yes, Your Honor. I mean, Mr. Turner... So how does he have a privacy interest in the car when he said it didn't belong to him? You know, Mr. Turner's position would be that he was operating the vehicle and that the evidence recovered from the search directly impacted the government's case against him, and that accordingly, he has standing to bring the exclusionary claim. Did this come up in the district court? Has the government argued that he didn't have a privacy interest in the car? No, Your Honor. This hasn't been briefed to this point. In Arizona v. Gantt, the Supreme Court recognized... And in fact, Your Honor, I think this is worth noting because in both the district court proceedings and in the appellate proceedings, the government has proceeded based solely on the search incident to arrest exception and the automobile exception. And so we'd like to talk about each of those exceptions here today. You know, obviously the first prong of the Gantt vehicle search incident to arrest analysis doesn't apply to the facts at hand. By the time law enforcement began searching the black Buick, Mr. Turner had already been arrested and securely placed in the back of Officer Flores' squad car. The second prong of the Gantt analysis hinges on whether it was reasonable for law enforcement to believe that the black Buick would contain evidence of the crime of arrest. And our position is that, you know, this presents some ambiguous questions of law as well as some unusual factual circumstances. Well, what is your position on what I'm anticipating you might say is an ambiguous question of law. But does reasonable to believe, where would you put that standard? What does that mean? Yes, Your Honor. We do think that's kind of the critical question here. Under the plain language of Gantt, our position would be that the government may only justify a warrantless search under the second prong of the vehicle search incident to arrest exception. By introducing facts indicating that it was reasonable for law enforcement to believe that the specific location of the search contained evidence of the specific crime of arrest. Sorry, I was wondering how you think reason to believe compares with probable cause. Oh, yes, Your Honor. I mean, we think it's probably, you know, this court has equated reasonable to believe with probable cause in the Payton v. New York context. That's in Brinkley, as we referenced in our brief. This probably, we think, doesn't apply to searching a vehicle incident to arrest under Gantt, as this court suggested in United States v. Baker. So you're saying it's not the equivalent of probable cause in the vehicle context? Is that what you're saying Baker supports? We think that's probably a fair inference that this court drew in Baker, Your Honor. And we think that's consistent with Gantt. The Supreme Court knew what probable cause when they decided Gantt. And if they wanted to require probable cause for the second prong of Gantt, they could have said so. OK, then can you tell me on reason to believe how that threshold is not met here? And let me tell you sort of what I'm thinking. You can tell me what I'm missing. So there's probable cause that he stole this gun two days ago or roughly two days ago. The next day, the officer at least has reason to believe that the next day he's using the gun. The defendant is using the gun. So he didn't steal it to sell it. He stole it to use it. And then the day after that, he's in a parking lot in the middle of the night, which is known as a place where there's gang activity. And the officer also has reason to believe that there might be some gang tensions and shots are fired. So why is it not reasonable to believe that he would have been carrying a gun if only for self-defense? And then when they didn't find it in the frisk, it must be in the car. Yes, Your Honor, I think there is. Critically, I think that both the government's reasoning and the district court's reasoning confuses this. There's two relevant. The second prong of the Gantt exception involves two relevant factual nexuses or nexi, if you will. Number one, between the crime of the arrest and the individual suspected of committing it, which is relevant to the arrest warrant or warrantless arrest of that individual. And then the second nexus would be between the crime of arrest and the location to be searched, which would be relevant to the search warrant or the warrantless search of that location. Isn't there reason to believe that this particular guy in this particular location at this particular time would have been armed? Again, if only for self-defense. And then once they frisk him and there is no weapon, why isn't that your nexus to the car? Yes, Your Honor, I think the distinction there would be, I'm thinking through it. Even in the way that Your Honor just posed the question, you said, wouldn't there be probable cause to believe or reason to believe that Mr. Turner was armed? We think that the factual connection that Gantt requires the government to draw is not between Mr. Turner and the firearm that he allegedly stole from his brother, but between the black Buick specifically and the firearm that he allegedly stole from his brother. But he's in it. He's in it. I mean, how do you change the fact that the person who there's a warrant for, outstanding for, for stealing a gun is in the Buick? I don't understand how you can take that fact out of the equation. Well, Your Honor, we're concerned about this reasoning, both that's being kind of sketched out here, because we're kind of concerned that this, if applied consistently, would effectively eviscerate the additional textual requirements of reasonable belief, to believe that the Supreme Court articulated in Gantt. Why are you concerned about that? I mean, in these facts we have an individual who there's a warrant for, for stealing a gun. That same individual, as Judge Harris says, is then using the gun and is then in a vehicle the next day, and they recognize him as the person who there's an outstanding warrant for. It seems like this is the, it seems like you shouldn't have any, if there's a case where there's not concerns about that standard being broadly applied, this would be it. I mean, most of these cases involve like a traffic stop that's unrelated to perhaps an outstanding arrest or something else, but here it seems like it's about as factually tied as one could get. Well, that's going to be true of, you know, Your Honor, we think that's going to be true of any case in which the second prong of the Gantt exception is being considered, right? The search pursuant to arrest necessarily only occurs when law enforcement already suspects that an individual has committed a crime. And so if that fact, law enforcement's suspicion of that individual and that individual's presence in a vehicle, if that fact standing alone were sufficient to conduct a search of the vehicle, then- Presence in a vehicle after shots were fired. That's what brought them to that area in the first place. So shots were fired. So it's not just in this case. It's not just presence in a vehicle. It's presence in a vehicle after he's been reported stealing a gun, next day using a gun, and then now shots are fired and there he is. Well, we want to draw a distinction between the shots fired call and the alleged offenses on June 1st and June 2nd of 2020, Your Honor. You know, respectfully, we think that the shots fired call to which law enforcement responded on the evening of the arrest probably isn't relevant to the reasonableness of their beliefs supporting the search, because the search incident to arrest exception only permits law enforcement to conduct a warrantless search for evidence of the crime of arrest, as opposed to the automobile exception more broadly, which lets them search for any criminal activity. Right, but you were saying that at least the reasoning that Judge Quattlebaum had articulated, you would have that in every case, and there are some distinguishing facts here that make it not every case. The whole factual lineup leading up to finding the firearm in the gun. Well, yes, Your Honor. I think the concern would be, you know, those facts in the rule statement as formulated kind of by Judge Quattlebaum and in slightly different terms by Judge Harris. You know, we would kind of read that as a presumption, you know, that a law enforcement suspicion that an individual committed a crime would categorically make it reasonable to believe that evidence of that crime would be found in any vehicle occupied by that individual. No, like what if when they had frisked him, they had found the gun? Then you'd have a really good argument, I think. Like what made you think there'd be evidence in the car? The evidence would be the gun, and you already have it. I mean, you can play with the facts here in a million ways and get to a much stronger case for your client that there's not enough. But I think I'm sort of echoing Judge Quattlebaum. This one, it just seems like, you know, a hypothetical of the case where there would be reason to believe there's evidence of the larceny of the firearm in this car. I think especially when you put it in those terms respectfully, Your Honor, that kind of sets up a catch-22 for criminal defendants or individuals that law enforcement suspects to have committed a crime. Because if you look at, you know, United States v. Norman or United States v. Baker, those are cases with a fact pattern similar to what you're suggesting, where law enforcement did either observe evidence of criminal activity in plain view inside the vehicle, or they searched the defendant and did find a firearm in Baker or drug paraphernalia in Norman. You know, there's, I think, a bag of cocaine in one of the women's hair. And in both of those cases, this court specifically relied on those facts. The officers found a firearm or evidence of criminal activity related to the crime of arrest, either in plain view or on the defendant's person. And they said that fact establishes the link for that second factual nexus that connects the crime of arrest to the location that was searched. And so instead, on one hand, we say if you find evidence of criminal activity on the defendant, that gets you, I mean, in Baker we said it goes all the way to probable cause. But it depends on the facts, right? If the crime of arrest is only larceny of a gun and you know the gun's not in the car, then it's going, I mean, I don't want to prejudge any cases, but it seems to me then the government would be swimming upstream because the only physical evidence of this crime we know is not in the car. Yes, Your Honor. I think, you know, we would just say in response to that that this would be a, that applying that kind of reasoning to these facts would be a significant expansion. That would be the broad, this court's broadest ever application of the second EBS exception. Before your time runs out, I have a different question on a different issue, and that's the supervised release conditions. Yes, Your Honor. I don't see the difference in the oral and written, the material difference in the oral and written conditions, the first and fourth conditions. How are they materially different, what the court said and what the court wrote? I mean, I don't see. Respectfully, Your Honor, the supplemental briefing order in this case requested additional briefing on the suppression motion, on the calculation of the advisory sentencing guidelines range, and on the potential discrepancies. Counsel's review of the record indicates that there are some superficial differences between the oral and the written conditions. So you also don't see a material difference? Not beyond this court's decision in Jenkins that, you know, any discrepancy is reversible. Good, I appreciate that. Yes, Your Honor. Can I ask a question just while we're kind of clarifying things? Sure. I just want to make sure I understand your position on inevitable discovery. And as I understand it, what you are arguing is that this is not like an inevitable inventory search case. The government has not made a showing that this evidence would, whatever happened in the parking lot, this evidence would have been found inevitably in an inventory search of the car. Is that your argument with respect to inevitable discovery? I see my time is about to expire. Would you like me to respond? No, please answer Mr. Chair's question. We actually don't think inevitable reliance, the district court's reliance on inevitable discovery, we don't think this court or the district court, we don't think inevitable discovery applies to this case. But I want to know what, I couldn't find in your brief any challenge to the way the district court applied inevitable discovery in that footnote to sort of account for the fact that there were two different officers at the scene. I did see in your brief an argument that the government had better not come in here and start talking about an inventory search being inevitable because that is not something that they have argued before. Yes, Your Honor. We think that the distinction between Officer Flores' knowledge and the knowledge of Corporal Peterson and the other searching officers is really important here. Is that discussed in your brief? Potentially, some.  You know, we would say that the district court's application of inevitable discovery was not supported by the evidence here and, you know, the government kind of, the government's supplemental response brief arguably supports this because they, you know, in that footnote on page 22, they say they're only addressing the exceptions to the warrant requirement that they believe are supported by the facts. They don't reference inevitable discovery. You know, we think this case essentially resembles United States v. Thomas from 1992, you know, from this court where, you know, just like in that case, the government with regards to the different searching officers is essentially arguing if we hadn't done it wrong, we would have done it right. And just, you know, here, just as in that case, our position is that the immediate warrantless search of the vehicle violated Mr. Turner's constitutional rights and tainted the subsequent proceedings. Okay. Thank you. You have some time in rebuttal. Yes, Your Honor. We'll hear from the government now. May it please the court. This court should affirm the district court's denial of Mr. Turner's motion to suppress for two reasons. The first is that Officer Flores did have a reasonable belief that evidence relevant to that crime of arrest, larceny of a firearm might be in that car. And two, that Officer Flores inevitably would have discovered that firearm during his search. Okay, so both your one and two involve Officer Flores, who's not the one that ultimately found the gun and not the one that started searching the vehicle first. So what's, what's your response to the argument that the officers that were searching the vehicle did not, were not aware of the reason he was being arrested? Yes, Your Honor. Corporal Peterson was Mr. Flores' direct supervisor, and he is indeed the individual who had begun the search. By the time Officer Flores returned to that Buick and started his own search. And while Officer Flores was searching for the gun in that driver's side door, Corporal Peterson finds the gun in the glove compartment. Had Corporal Peterson not been involved in this at all, Officer Flores would have continued his search, opened the glove compartment where people keep their firearms. Okay, but he wasn't, but, but Peterson was involved and did start the search before Flores got, even got back to the car. So doesn't that sort of negate the search incident to arrest probable cause, if Peterson doesn't even know why appellant was being arrested? Your Honor, my understanding of the law with respect to inevitable discovery is that even if we were to assume that Peterson's search was unlawful in the moment, that Officer Flores did meet the standard reasonable to believe there was evidence and that that lawful search, he would have found the gun. Now, Your Honor, this is my- Are you giving up the search incident to arrest? Oh, no, Your Honor. Okay. No, Your Honor. Then how is this a valid search incident to arrest when Corporal Peterson arguably did not know what appellant was being arrested for at the time he started the search? Because Officer Flores did, and he was searching the vehicle. Okay. Did what? He did what? He did not meet the standard reasonable to believe that that firearm was in that Buick. No, right. I know that. Did Corporal Peterson, was he aware of why appellant was being arrested? Your Honor, interestingly, as Mr. Turner has presented to the court, apparently they present that there is not evidence in the record of that, and certainly we didn't include that in our briefing. But in preparation for oral argument, there is actually evidence in the record that Corporal Peterson did, in fact, know who Mr. Turner was and why he was being arrested. Your Honor, in JA 253, that's Officer Flores' body-worn camera, if you go to 1 minute and 43 seconds- Yep. That's when Officer Peterson's- I was waiting for you to say that. That's when Officer Peterson says, oh, that's the one we've been looking for. I got you. Yes, Your Honor. That's the response to appellant's argument. Peterson did know that they had been looking for him, and arguably for what, since he's the supervisor. Yes, Your Honor. And then when he finds the gun at 3 minutes and 50 seconds, he says, oh, here's the gun. Right, the gun, not a gun, the gun. Yes, Your Honor. I agree with you. Those are two pretty good facts for the government. Yes, Your Honor. Can I-we asked your colleague about the relationship of probable cause and reasonable to believe, and I take it it's your position that reason to believe evidence might be in the vehicle is not the same as probable cause? That's correct, Your Honor. What is it? Well, the government agrees with Mr. Turner that in the vehicle context, it is something less than probable cause, which of course itself is less than preponderance. And as Mr. Turner mentioned to the court, this court itself has distinguished in many cases- I got that. What is it? Yes, what is it? Well, if I could borrow words from Judge Richardson in her dissent in Brinkley. So she was evaluating the fact that she did not believe that reasonable belief meant probable cause because she then went on to explain what reasonable belief required and said that an objectively reasonable belief still must be based on specific articulable facts and reasonable inferences therefrom. Is that-as I recall, that equated reasonable belief to reasonable suspicion in a Terry sort of context. It did, Your Honor. But doesn't that run into problems? Because one of the reasons for arguing there's a difference in probable cause and reasonable to believe is the Supreme Court knew how to use probable cause but used reason to believe. But the Supreme Court knows how to say reasonable suspicion, and it said reasonable to believe. So I think those-I'm not sure how that really-what that really leaves us with. On the other hand, reason to believe there might be evidence in the vehicle, one might say is pretty darn close to how you would define probable cause. So I'm not sure what all this means. Brinkley, you know, says it's-specifically says it's for the home. I think your colleague was, you know, displayed candor in saying going back to Baker suggests there's a difference. I'm not sure that makes sense of all that, quite honestly. Here there's probably probable cause, even if that's the standard. But anyway, I just-yeah, I'm having, I guess, trouble understanding what the government is actually asking us to say the standard is. It sounds like you're saying the standard is reasonable suspicion. Your Honor, I think that how reasonable suspicion is defined could make sense. That's what reasonable belief means. Justice Alito, a month after Gant in May 2009, descended to a remand in Messenger. And because he wanted the court to keep that case, to grant cert, so that it could more precisely define what he called the reasonable suspicion standard in Gant. So I'm not sure if that was just careless writing or if he himself thought, well, these two are akin. And I think the D.C. Circuit has said they're akin. I thought in Terry it's reasonable-just to add one more twist. I think in Terry it's reasonable suspicion for a stop. But for a frisk, you need reason to believe the suspect is armed and dangerous. So I actually think Terry itself says it both ways. But anyway. Yes, unfortunately, Your Honor, I don't have a precise definition for you. I can just turn you back to the fact that it is something less than probable cause. And certainly here the question is, are there facts from which a reasonable officer could infer that this firearm might be in that car? And there absolutely are, as this court has already recognized. The district court found Officer Flores' testimony credible. And Mr. Turner does not dispute that nor any other finding of fact by the district court. And so what did the district court find that Officer Flores knew at 2 a.m. on June 4th? Well, in JA 84-85, the district court goes through these facts. On June 1st at 6.30, Officer Flores himself personally responded to that larceny of a firearm call. It was Mr. Turner's brother, described the gun, gave him the serial number, told him why he thought it was Mr. Turner, said Mr. Turner was in a gang that might be in a beef with another gang. Can I ask you, Counsel, I don't want to cut you off, and I know the district court accounted for a lot of facts at the pages you've cited. But I am trying to get a handle on how broad a rule you want us to kind of announce because, you know, your colleague has these concerns about how far-reaching it would be. So what if all the facts are the same but it's not a firearm? It's that he stole some cash from his brother. And then two days later they find him in this parking lot. Everything else is the same. Would you say there's reason to believe that evidence of the theft of some cash would be in the car? Your Honor, if the only facts before us were theft of cash and then two days later he is arrested for theft of cash, I suppose perhaps, but I think that's a much closer call, Your Honor. What's the difference that you don't, people don't, I mean, it seems like the only difference might be the district courts. Because district courts cited three things, I think, in terms of really getting at that reason to believe. It listed all the facts you described but then cited to authority that talks about vehicles being a place that are uniquely, some have, has some unique basis for being a place where you hide firearms at least. Then it cited the existence of an arrest warrant. Then it cited the presence in a high crime area. It seems like two and three are the same. So is a vehicle any less likely a place to keep cash than it is a firearm? Well, not necessarily. However, the district court also identified the intervening alleged carjacking. Yeah, that's a factual thing. Yes. Right, right, for sure. So let's say that this is the cash hypothetical again and we have an arrest warrant for theft and the next day we see him out and about and we know the serial numbers so we know that he's using this money. Then perhaps there is reasonable belief when we see him the next day in the car. We pat him down, no cash, so we can look in the car but only for the cash because, again, this is reasonable belief. So if we don't have, playing that, what if we have all our facts but don't have the day after the arrest warrant when he's using the gun? So all we have is an arrest warrant and then two days later we find him. Yeah, we have everything except that incident reported the day after the arrest warrant where he is reported to be brandishing and then no arrest is issued. Your Honor, perhaps that could be reasonable belief since we're talking about something less than probable cause which is less than preponderance. I think, fortunately, the court doesn't perhaps have to answer that question with this case because we do have all of these facts and these are inevitably fact-specific situations. Certainly understand the inquiry as to how far should this go and I think here, as you, Judge Quattlebaum, mentioned, if there ever was a case where there was reasonable suspicion that a vehicle might have evidence of a crime, it's this one. But part of our problem is we all the time list the facts and then we list the conclusion. And maybe that's just what we should do because these things are factual. But we don't really define the rules in a way that is clear to future cases. And maybe it's unfair to do that because they're inherently factual and that may be right. But it's also a bit hard to know where we stand when we list a bunch of facts and say, without delineating the line, this at least meets it. And assume we don't want to do that. Do you have a line that you'd like us to apply? Do you have a suggestion for us? Well, Your Honor, I have a suggestion of a low bar, which is the case in Graham, where this court found in 2017 that there was no reasonable belief that evidence of what was in a two-year-old arrest warrant for offenses unknown to law enforcement officers might be in that car. That's certainly not reasonable. With respect to your hypothetical, is it reasonable that cash might be in that car when we know that two days ago there was an arrest warrant taken out for theft of that? That may very well be reasonable belief to search that vehicle for that cash. I think the court can look at what the district court noted courts tend to look at when determining reasonable belief. Certainly if there are warrants outstanding, for what? How old are they? What type of offenses those are? The individual's characteristics and where you are. And so perhaps the court could list factors such as that as examples. And certainly this case meets those, Your Honors. With respect to, if you have any further questions about that particular issue, I'm happy to answer them. We'll move on to the fact that Mr. Turner has conceded issue number three, that the supervised release conditions really show no material difference. And as the court has recognized, Mr. Turner and the government do believe that procedural error did occur with the second issue in the calculation of Mr. Turner's criminal history category. And so from the government's perspective, Your Honor, remand is appropriate, but only because of that particular error. I mean, usually if we're remanding anyway for resentencing, we don't bother talking about other sentencing issues. What would you have us do in this case? I think, Your Honors, can decide that the court did appropriately implement those special conditions as just being able to inform the court that what it did was appropriate. But obviously, certainly the court will have an opportunity, if it so chooses, to read explicitly what's in the written judgment as it pronounces. Can I ask you a question, just if we are going to reach the Rogers Singletary issue at all? It did seem to me that in addition to perhaps there not being much of a material difference, am I right that also the district court at sentencing said that it was incorporating the special conditions from the PSR, assured that everyone had read the PSR, and then the PSR conditions are word for word what's in the judgment? So it kind of strikes me that that's enough. And even if there were a material inconsistency, everyone's on notice. It's the thing in the PSR. That's correct, Your Honor. The court has no further questions. All right. Thank you very much. Mr. Prescott. Thank you, Your Honor. First, we'd like to touch briefly on the facts available to the arresting and searching officers in this case. You know, the government makes a big point of highlighting the factual findings regarding Officer Flores' knowledge at the time of the search of the black Buick. You know, Mr. Turner would just respectfully note that at most, even including the moments from the body cam video that suggested that Corporal Peterson may have been aware of who Turner was or may have at most been aware that Mr. Turner was under investigation for some firearm-related crime, all those gory, colorful details from the carjacking and the larceny of the firearm and Officer Flores chasing Mr. Turner all around Durham for three days, you know, those certainly, there's no evidence in the record to indicate that the searching officers were aware of any of those facts at the time of the search. I just, again, it's an interesting question about the two officers, but it's not briefed. And also, if we're just going to reach it hypothetically. Anyway, I still don't understand why this isn't just a collective knowledge case. And I know we have cases saying, well, if it's collective knowledge, it's because one person ordered the other person. But those are cases where, like, one guy's in North Carolina in police headquarters, and then someone stops the car 200 miles away on the highway, and the police officers come in and say, collective knowledge. And we say, not so fast. Like, you have to show that there was some knowledge transmitted. But when it's all the officers on the same scene executing a warrant together, I'm not aware of any cases that say, like, we have to cut the knowledge element quite this fine. Are you? I'm not aware of a specific case in that line, Your Honor. Although I could brief it in, you know, of course. I would just point the court to Massenburg, which does say that, you know, collective knowledge generally only applies when there's specific knowledge and instructions. And, you know, Mr. Turner would respectfully submit that, you know, especially when you watch the body cam, this is more of a case where. I'm sorry. Before we get away, I just, I am very worried about opening the door to a situation when any time more than one police officer is on the scene, we're going to have to have a mini trial about who knew what when. I think when police officers act as a group, we generally think, like, whatever the police, that collective knew, is what matters. And I'm very worried about having these mini trials at every suppression hearing about, well, this guy put the handcuffs on, and he didn't know what this guy knew when he was over impounding the car. That's a valid concern, Your Honor. I think the only thing I would mention in response is that that concern would need to be balanced against this concern that this court has repeatedly articulated that the Fourth Amendment needs to guard against these kinds of arbitrary and boundless police prejudgment. And so I think that's an interesting dynamic where the more deference is given to the, you know, police officers acting as a unit, they all believe the same thing, they understand the same things about Mr. Turner, the closer, the more credence we get to that kind of collective prejudgment that because we're all, you know, investigating Mr. Turner for this firearm, we're kind of automatically, categorically entitled to search his vehicle the moment we see him get walked to a squad car in a sketchy area of town. You know, that should raise concerns under the Fourth Amendment. And in fact, you know, I think that actually highlights the, you know, one principle that Mr. Turner would suggest as an answer to Judge Quattlebaum's question about how to kind of thread this needle between probable cause and reasonable suspicion. And as Judge Harris suggested, I think the exact phraseology in Michigan v. Long and in Terry is reasonable belief, which is semantically different from reasonable to believe and may mean something slightly different in the Terry Stubb context versus the Gantt context. You know, Mr. Turner just respectfully submits that the, you know, the requiring a nexus between not just the defendant and the crime of arrest, but between the crime of arrest and the location to be searched helps us thread that needle and navigate those standards. And this is consistent with, you know, this court's case law on both sides of that issue. You know, on the one hand, we have the Thornton slash Belton type cases, like United States v. Buckman, where the defendant was identified leaving the scene 15 minutes, you know, was identified leaving the scene of a crime 15 minutes before the search of the vehicle occurred. Or United States v. Ortiz, where we have this exhaustive scouting report from the New Jersey Highway Patrol expressing all the reasons that they believe there's evidence of criminal activity in the specific vehicle. We've got United States v. Norman, which I think Judge Thacker was on, where there's extensive evidence of criminal activity in plain view of the vehicle. We've got United States v. Baker, where the, again, which I mentioned earlier, where the law enforcement recovered a firearm and drug paraphernalia on Baker's person. You know, those are cases where, you know, I think those cases highlight that requiring the government, holding the government to its factual burden of proof to show a link between the crime of arrest and the location to be searched. So under that theory, if a defendant, you know, is, let's say, leaves in his own vehicle, it has the same situation here, you know, steals a gun, leaves in his own vehicle. You may say there's a nexus there to that vehicle he leaves with. There's evidence that he left in the vehicle with the gun. But then he, you know, didn't want to get caught, so he steals another vehicle, and he's caught in the stolen vehicle. Is there a nexus there? That would, I mean. It sounds like you're trying to say we've got to have evidence that an actual vehicle the gun would be in. Maybe that's right, but that would seem to, that might mean the hypo I just offered, there's no nexus. I see I'm over time. Please answer the question.  Yes, please. I think, you know, the government mentions this in the supplemental response brief as well, that, you know, the government isn't required to have this specific evidence of this specific firearm in this vehicle. We're not saying they need a report. We're not saying they need the New Jersey Highway Patrol report from Ortiz. We're just saying that there needs to be something, and you have a burden of proof to make that connection somehow. And in a lot of cases, like in Buckman, Norman Baker, the facts supporting the first nexus between the defendant and the arrest are going to be the same facts that support the nexus between the vehicle and the crime of arrest. And in those cases, it would be very, very easy for the government to make that factual showing to connect those two things. And it doesn't need to be a preponderance of the evidence. It doesn't need to be super exhaustive. But, you know, this. Does that answer your question, Judge Potomac? Do you have any further questions? No. All right. Thank you. We appreciate your argument, Mr. Prescott. And thank both counsel for your very good arguments. In particular, the court appreciates your work, Mr. Prescott, as court-appointed counsel for Mr. Turner. So we'll come down and greet counsel and adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: Stephanie D. Thacker, Pamela A. Harris, A. Marvin Quattlebaum Jr.